NO. 14-1751
_____

In the

UNITED STATES COURT OF APPEALS

for the Sixth Circuit
_____

Barbara Campbell
*Plaintiff-Appellant*

v.

Nationstar Mortgage, et al,
*Defendants-Appellees,*

On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division
_____

APPELLANT'S BRIEF ON APPEAL
_____

**VANESSA G. FLUKER, ESQ. (P64870)**
**VANESSA G. FLUKER, ESQ., PLLC**
**2921 E. JEFFERSON AVE, SUITE 200**
**DETROIT, MI  48207**
**(313) 393-6005**

*Counsel for Plaintiff-Appellant*

**ORAL ARGUMENT REQUESTED**

_____

# DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, BARBARA CAMPBELL, et al, makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned company?

NO.

If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

2.      Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?

NO.

If the answer is YES, list the identity of such corporation and the nature of the financial interest:

<u>/s/ Vanessa G. Fluker, Esq.</u>
Vanessa G. Fluker, Esq.
Attorney for Barbara Campbell

Dated:  August 12, 2014

# TABLE OF CONTENTS

**Page**

Corporate Disclosure ................................................................... ii

Table of Contents........................................................................ iii

Table of Authorities.....................................................................iv

Statement In Support of Oral Argument.......................................v

Jurisdictional Statement ...............................................................1

Statement of Issues For Review ....................................................2

Statement of The Case ..................................................................3

Statement of Facts.........................................................................9

Summary of The Argument .........................................................10

Standard of Review......................................................................11

Legal Argument ...........................................................................13

I.    The Trial Court Erred In Ruling Appellant's Pleadings Did Not Create Factual Issues Sufficient To Survive Appellees' Motion To Dismiss Pursuant To Fed. R. Civ. P. Rule 12(B)(6)....................................................13

II.   The Trial Court Erred In Failing To Find Appellant Demonstrated An Irregularity With The Foreclosure And A Violation Of MCL 600.3205 And MCL 600.3204 ..........................................................16

III.  Appellant Raises A Viable Claim Under 12 CFR 1024.41 Supported By Applicable Case Law And 12 CFR 1024.41 Is A Remedial Statute And The Trial Court Erred In Its Ruling .........................................................21

IV.   The Trial Court Misinterprets The Recent Sixth Circuit Decision Mik V Federal Home Loan Corporation, Supports Appellant's Claim That Failure To Evaluate Her For A Loan Modification In Violation Of Federal Regulations, Can Be Raised As A Defense To Foreclosure And Eviction ....................................................................27

CONCLUSION ...........................................................................33

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE
DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

## CASES

*Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 350-53 (D. Mass. 2011)33

*Fletcher v. Onewest Bank, FSB*, No. 10 C 4682, 798 F. Supp. 2d 925, 2011 U.S. Dist. LEXIS 72562, 2011 WL 2648606, at *3-8 (N.D. Ill. 2011 .....................32

*Galliard v. USAA Fed. Sav. Bank*, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012) ...............................................................................................17

*Haliw v Sterling Hts*, 464 Mich 297, 309-310; 627 NW2d 581 (2001).................30

*Hart v Countrywide Home Loans, Inc,* 735 F Supp 2d 741 (2010).......................29

*Kennedy v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 111013, 10-12 (C.D. Cal. Sept. 28, 2011) ...........................................................................................32

*Kim v JP Morgan Bank*, 2012 Mich LEXIS 2220 ...............................................20

*Mik v. Federal Home Loan Mortgage Corporation*, 2014 U.S. App LEXIS 2332; 2014 FED App 0030P (6th Cir.) ......................................................27, 28, 29

*Sobh v. Bank of Am.,* 2013 Mich. App. LEXIS 993, (Mich. Ct. App. June 6, 2013) ...............................................................................................................20

*Thaut v Finley (On Rehearing)*, 50 Mich App 611, 613; 213 NW2d 820 (1973)...31

*Wigod v. Wells Fargo Bank*, N.A.,673 F.3d 547, 544 (7th Cir. 2012) .............28, 29

## STATUTORY PROVISIONS

MCL 600.3205...............................................................................................13, 14

## FEDERAL AUTHORITIES

Fed. R. App. P. 32 (a)(7)(C)..................................................................................1

Fed. R. App. P. Rule 4 (a)(1)(A),(4)(A) ................................................................1

Fed. R. Civ. P. Rule 12(B)(6)................................................................................13

28 USC §1291 .......................................................................................................1

28 USC §1331 .......................................................................................................1

28 USC §1367(a) ...................................................................................................1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Barbara Campbell requests oral argument in order to more fully explain the reasons why this Honorable Court should reverse the judgment of the District Court and to answer any questions the Court might have.

## JURISDICTIONAL STATEMENT

This is an appeal of an action over which the District Court had subject-matter jurisdiction pursuant to 28 USC §1331 and 28 USC §1367(a).

The District Court issued an order granting Appellees' Motion to Dismiss on May 19, 2014.

On June 15, 2014, Barbara Campbell, timely filed a Notice of Appeal pursuant to Fed. R. App. P. Rule 4 (a)(1)(A),(4)(A). This Honorable Court has jurisdiction over the final decision of the District Court pursuant to 28 USC §1291.

## STATEMENT OF ISSUES FOR REVIEW

I.   WHETHER THE TRIAL COURT ERRED IN RULING APPLELLANT'S PLEADINGS DID NOT CREATE FACTUAL ISSUES SUFFICIENT TO SURVIVE APPELLEES' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6)?

II.  WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND APPELLANT DEMONSTRATED AN IRREGULARITY WITH THE FORECLOSURE AND A VIOLATION OF MCL 600.3205 AND MCL 600.3204?

III. WHETHER APPELLANT RAISES A VIABLE CLAIM UNDER 12 CFR 1024.41 SUPPORTED BY APPLICABLE CASE LAW AND 12 CFR 1024.41 IS A REMEDIAL STATUTE AND THE TRIAL COURT ERRED IN ITS RULING?

IV.  WHETHER THE TRIAL COURT MISINTERPRETS THE RECENT SIXTH CIRCUIT DECISION *MIK v FEDERAL HOME LOAN CORPORATION*, SUPPORTS APPELLANT'S CLAIM THAT FAILURE TO EVALUATE HER FOR A LOAN MODIFICATION IN VIOLATION OF FEDERAL REGULATIONS, CAN BE RAISED AS A DEFENSE TO FORECLOSURE AND EVICTION?

# STATEMENT OF THE CASE

## Appellees Brought A Summary Judgment Motion Disguised As A 12(B)(6) Motion To Dismiss

Defendants label their motion as a motion to dismiss under 12(b)(6), yet the motion actually raised more facts that require not only looking outside the pleadings but that requested the Court to accept Appellees' factual analysis as a basis for dismissal. This was not the first instance where Appellees' counsel requested a court to look beyond the scope of a 12(b)(6) motion, when it really was a disguise Rule 56 summary judgment motion. In *Hampton v. Long Beach Mortgage Co et al,* 10-10786, Judge Victoria Roberts entered an order striking the 12(6) motion because it was a disguised Rule 56 motion. (RE #6-2, Response Ex. 1, Page ID 273-274)

That is exactly what occurred in the instant matter. The analysis of Appellees' brief and Appellant's response brief is beyond the scope of a 12(b)(6) motion, and requires factual support and actually expert testimony, which necessitates discovery. There are numerous instances where Appellees asked the trial court to accept unchallenged its own factual determination not addressed in the pleadings such as:

- The documentation supplied by Plaintiff supported receipt of $1,741 per month in Social Security Disability benefits and $200-250 per month in financial support from her son, for a total of $1,941-$1,991 per month. *Id.* Plaintiff acknowledged $1,230 per month in expenses before paying her Mortgage, property taxes and insurance, and without accounting for car insurance, gas, food, or other expenses.

3

(*Id.*) Based on Plaintiff's submissions, she only had at most $761 in disposable income in 2013 *without* taking into account a mortgage payment, car insurance, gas, or food. (*Id*.) (*See,* RE #5, Motion to Dismiss, Page ID 99-100)

- Plaintiff requested a meeting, and Nationstar's designee, Trott & Trott, P.C. requested certain documentation to complete its review, but Plaintiff did not send any documents to Trott & Trott. *See* MCL 3205a Correspondence, Ex. F. When Plaintiff failed to return any documents to Trott & Trott as required by the statutory process, Nationstar proceeded with foreclosure and published notice of foreclosure beginning on May 27, 2013 in the *Detroit Legal News*. Affidavit of Publication, Ex. D, at p. 3. (*See,* RE #5, Motion to Dismiss, Page ID 99-100)

- Defendants' refer to its Exhibit F, for reliance of that it complied with MCL 600.3205, however Defendants attached an unsigned letter dated May 15, 2013, which Plaintiff did not attach to her complaint, and never received.

- Plaintiff has not alleged that she would have qualified for a loan modification, nor has she provided any evidence to show that she would have been able to afford any modified mortgage amount given the income and expenses she reported. (*See,* RE #5, Motion to Dismiss, Page ID 104)

Appellees made these factual assertions, outside the pleadings requiring discoverable information. For instance, Appellees state, based on Appellant's income, she was not qualified for a modification. Appellees cannot make that assertion as the modification review involves a federal standardized process that permits an interest floor of two (2) percent, amortization out for a term forty (40) years, principal deference and principal forgiveness. The HAMP guidelines specifically provide:

4

### 6.3.1 Step 1—Capitalization

In the first step, the servicer capitalizes accrued interest, out-of-pocket escrow advances to third parties, and any required escrow advances that will be paid to third parties by the servicer during the TPP. In addition, the servicer capitalizes servicing advances that are made for costs and expenses incurred in performing servicing obligations, such as those related to preservation and protection of the security property and the enforcement of the mortgage, provided such costs and expenses are (i) consistent with the security instrument; (ii) allowable under GSE guidelines; and (iii) not prohibited by applicable law.

For example, foreclosure fees and costs paid to a third party in the ordinary course of business are considered servicing advances and may be capitalized unless the borrower agrees to pay the fees and costs upfront. However, fees associated with modification of the mortgage, such as modification agreement recording fees and title fees generally are not covered by the security instrument and may not be capitalized. Recording fees and title fees generally are considered administrative costs and may be reimbursable by the investor through the ordinary course of business, subject to applicable investor contracts.

Any prior forbearance amount may be capitalized to the extent that such forbearance is permitted under, and any required disclosures comply with, all applicable laws, rules and regulations. The servicer should capitalize only those third party delinquency fees that are reasonable and necessary. Fees permitted by Fannie Mae and Freddie Mac for GSE loans shall be considered evidence of fees that would be reasonable for Non-GSE Mortgages.

Late fees may not be capitalized and must be waived if the borrower satisfies all conditions of the TPP. The servicer may not capitalize junior lien holder subordination fees. Servicers are not required, but may choose to pay those fees out of pocket and offset costs out of their incentive payments. In addition, lender paid mortgage insurance premium costs should not be capitalized. Lender paid mortgage insurance premiums are a

lender obligation and not an obligation of the borrower. Chapter II: HAMP MHA Handbook v3.0 66

### 6.3.2 Step 2—Interest Rate Reduction

In the second step, the servicer reduces the starting interest rate in increments of 0.125 percent to get as close as possible to the target monthly mortgage payment ratio. The interest rate floor is 2.0 percent. If a borrower has an ARM or interest-only mortgage, the existing interest rate will convert to a fixed interest rate, fully amortizing loan. If the loan is a fixed rate mortgage or an adjustable-rate mortgage, the starting interest rate is the current interest rate. If the loan is a Reset ARM, the starting interest rate is the Reset Interest Rate if it is within 120 days of reset.

If the current mortgage rate (or the ARM reset rate, if applicable) is not at a 0.125 percentage point increment, servicers should not round the interest rate first. Begin with the un-rounded rate and reduce it in 0.125 percentage-point increments until the target monthly mortgage payment ratio is achieved. Upon reaching the point where a further 0.125 percentage-point increment will reduce the rate below 2.0 percent, set the rate to exactly 2.0 percent with no term extension and determine if the target monthly mortgage payment ratio is achieved. If it is not, move to the next step of the waterfall (term extension). The interest rate must be fully reduced to 2.0 percent prior to any term extension.

For example, test for the target monthly mortgage payment ratio at 2.180 percent; if it is not achieved, reduce the rate to 2.055 percent and test again; if it is not achieved, reduce the rate to 2.000 percent and test again; if it is not achieved, fix the rate at 2.000 percent and move to the term extension step of the waterfall.

If the resulting rate is below the Interest Rate Cap (as defined in Section 9.3.6), this reduced rate will be in effect for the first five years. This is followed by annual increases of one percent per year (or such lesser amount as may be needed) until the interest rate reaches the Interest Rate Cap, at which time the rate will be fixed for the remaining loan term. If the resulting

rate exceeds the Interest Rate Cap, then that rate is the permanent rate.

### 6.3.3 Step 3—Term Extension

If necessary, in the third step the servicer extends the term and re-amortizes the mortgage loan by up to 480 months from the Modification Effective Date to achieve the target monthly mortgage payment ratio. The Modification Effective Date is the due date for the first payment under the permanent modification. The term extension steps must be made in one-month increments. If a term extension is not permitted under the applicable servicing agreement or applicable law, reamortize the mortgage loan based upon an amortization schedule of up to 480 months with a balloon payment due at maturity. Negative amortization after the effective date of the modification is prohibited. The servicer will document the prohibition on the term extension, if applicable.

If the loan's current remaining term is greater than 480 months, it does not disqualify the borrower from HAMP eligibility. If the borrower is eligible under HAMP and the reduction of their current interest rate to 2.0 percent is not sufficient to reach the target monthly mortgage payment ratio of 31 percent, the servicer will skip the term extension step of the standard modification waterfall. The servicer will proceed to the principal forbearance step of the waterfall to attempt to achieve the target monthly mortgage payment ratio of 31 percent. The servicer will enter the remaining term in the NPV input field labeled "Amortization Term after Modification" so that the number in this field and the "Remaining Term" NPV input field are identical. Chapter II: HAMP MHA Handbook v3.0 67

### 6.3.4 Step 4—Principal Forbearance

If necessary, the servicer will provide for principal forbearance to achieve the target monthly mortgage payment ratio. The principal forbearance amount is non-interest bearing and nonamortizing. The amount of principal forbearance will result in a balloon payment fully due and payable upon the earliest of the borrower's transfer of the property, payoff of the interest bearing UPB, or at maturity of the mortgage loan.

### 6.3.5 Principal Forgiveness

There is no requirement to forgive principal under HAMP. However, servicers may forgive principal either up front or on a deferred basis under PRA to achieve the target monthly mortgage payment ratio. Up front principal forgiveness may be granted on a standalone basis or before any step in the standard waterfall process. If principal is forgiven up front, subsequent steps in the standard waterfall may not be skipped. If principal is forgiven either up front or on a deferred basis under PRA and the interest rate is not reduced, the existing rate will be fixed and treated as the modified rate for the purposes of the Interest Rate Cap. (RE #6-3, Response Ex. 2, Page ID 275-292)

There are instances where large amounts of the principal are deferred, to make the payment affordable such as a matter out Wayne County Circuit Court where the sheriff's sale was set aside and the loan modified deferring $237,754.95, with a senior citizen paying on a $17,000.00 current principal balance. (RE #6-4, Response Ex. 3, Page ID 294-296) (RE #6-5, Response Ex. 4, Page ID 297-303)

Moreover, Appellees produced documents that were not a part of the complaint, not a public record, and asserting reliance to justify its violation of MCL 600.3205 by adding an unknown document dated May 15, 2013. attached to its motion to dismiss as Exhibit F.

Appellees brought a disguised Rule 56 motion without Appellant having the benefit of discovery or the ability to attach affidavits in support of her position. This is unacceptable and the Appellees' motion should have been denied.

8

## STATEMENT OF FACTS

Appellant applied for a home loan modification in January 2013. Appellant believed that this would provide some financial relief. Due to Appellant's limited visual abilities Appellant had her son assist her to complete the application online. Appellee Nationstar assigned Appellant a Single Point of Contact, Yvette Dillard. Appellant saw information about the Step Forward Michigan program[1] and immediately made an appointment and was assigned a housing counselor, Lester Jones, through the Detroit Non-Profit Housing Agency. The modification application was submitted again by the organization and Appellant signed the paperwork for them to advocate on Appellant's behalf. Appellant received a letter from Nationstar dated March 6, 2013, indicating her loan was being evaluated for a FNMA Apollo Trial Period. The letter further stated, "Please note that during this evaluation period, your home will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure process has already been initiated". (RE #1-2, Appellant's Complaint, Ex. 6, Page ID 53-54) Appellant's home had not been referred to foreclosure nor was there a foreclosure sale in process at this time when Appellant began the modification evaluation process.

---

[1] The Step Forward Michigan Program is a part of HAMP through the Hardest Hit Homeowners whereby borrowers with medical hardship and unemployment issue may receive up to $30,000.00 to pay arrearages to assist in making them eligible for modifications under the HAMP program.

Appellant received a letter from Trott & Trott, P.C., on behalf of Appellees Nationstar advising of an in-person meeting.  (RE #1-2, Appellant's Complaint, Ex. 7, Page ID 55-57)  Appellant promptly responded and received a letter from Trott & Trott, P.C. confirming receipt of the request.  (RE #1-2, Appellant's Complaint, Ex.8, Page ID 58-59)   Appellant was never given a meeting despite calls to find out why.

Appellant began receiving letter from Appellee Nationstar for documents and changing contact persons. (RE #1-2, Appellant's Complaint, Ex. 9, Page ID 60-63)  Appellant diligently fulfilled all of Nationstar's requests for additional documents.  Appellant received a letter dated June 19, 2013, again requesting additional documents that had already been provided to Nationstar.  The document according to the letter were due by July 20, 2013. (RE #1-2, Appellant's Complaint, Ex. 10, Page ID 64-65)

## SUMMARY OF ARGUMENTS

The issues raised in the instant appeal arise from the opinion of the district court that held Appellant did not meet her burden to survive a 12(b)(6) motion and establish a single genuine issue of material fact for factual development through discovery based upon her pleadings, failed to establish an irregularity in the foreclosure process, could not establish negligence and was precluded from enforcing 12 CFR 1024.41.  Appellant meet her burden, as a violation of MCL 600.3205, is an automatic violation of MCL 600.3204, precluding the legal ability

to move forward with a valid foreclosure.  Moreover, Appellee expressly in writing represented to the Appellant her loan would not be referred to foreclosure and if it was in foreclosure the activities would be suspended.  Appellant attempted to avail herself to the rights afforded by MCL 600.3205, but was denied a mediation meeting under MCL 600.3205.

Appellant further asserted negligence, which is viable state law claim of Appellees' violation of the duty **to evaluate for a modification before a foreclosure.**  Appellant raised numerous issues of material fact for factual development, and discovery was warranted, and the trial court improperly made erroneous factual determinations to develop it ruling in this matter.  Moreover, the Appellant complied with all the statutory requisites to avail herself to the mandatory mediation under MCL 600.3205.   The trial court erred in its ruling on this issue as well as the new and novel issue of the retroactive application of the recently codified consumer protection law under Dodd Frank Act, specifically 12 CFR 1024.41.  The trial court's ruling should be reversed and the matter remanded for proper adjudication on the merits raised by the Appellant.

## STANDARD OF REVIEW

In evaluating a complaint under Fed. R. Civ. P 12(b)(6), the court determines whether a claim upon which relief can be granted has been established. In a motion to dismiss pursuant to Fed R Civ P 12(b)(6) a plaintiff must include enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Co.*

11

*v. Twombly*, 550 U.S. 544, *127* S. Ct. 1955, 167 L.Ed 2D 929 (2007).   The complaint must be liberally construed, assuming the facts therein are true and drawing all reasonable inferences from those facts in the plaintiff's favor.  *Id. at* 1964-1965.   A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all the factual allegations contained therein.  *Id.*

In *Johnson v. Equity Title & Escrow Co. of Memphis, LLC*, 476 F. Supp. 2d 873, 876-877 (W.D. Tenn. 2007), the court further discussed the Standard of Review in a motion based on Fed. R. Civ.12(b)(6).  The court held:

> The court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond*, 866 F.2d at 175. The United States Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41. 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see also *Neitzke*, 490 U.S. at 326-27; Lewis, 135 F.3d at 405 (6th Cir. 1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90(1974).

In the instant matter, Appellant raised numerous issues that relief may be granted and discovery will enhance the Plaintiff's prima facie case of each claim. The Appellees' motion to dismiss should been denied, and the trial court erred in its ruling.

12

## LEGAL ARGUMENT

### I.  THE TRIAL COURT ERRED IN RULING APPELLANT'S PLEADINGS DID NOT CREATE FACTUAL ISSUES SUFFICIENT TO SURVIVE APPELLEES' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(B)(6).

The Appellant's appeal is from the ruling in favor of Appellees on a motion to dismiss. To survive a 12(b)(6) a plaintiff must include enough facts to state a claim for relief that is plausible on the face of the complaint. Appellant's complaint specifically raised factually issues of

In *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F3d 949, 952 (6th Cir. Mich. 2012), the lower court articulated the specific circumstances pursuant to MCL 600.3204 (4)(d)-(f) wherein the law affirmatively prohibits foreclosure by advertisement, thus rendering the underlying foreclosure open to a post-redemption challenge  subject to a voidable analysis on prejudice.  The court noted:  "These include situations where the designated person has not negotiated with the borrower as requested, where the parties have independently agreed to a loan modification, and where the statutory calculations show that the borrower qualifies for a loan modification." *Mitan*, 703 F3d at 952

In *Mitan, supra*, plaintiff borrower requested mediation to be evaluated for a loan modification pursuant to MCL 600.3205.  There was a factual dispute as to what happened after that.  The borrower pled that he sent the lender requested documents to be evaluated for a loan modification under the statute.  The borrower

pled that the lender, Wells Fargo, sent him a letter stating Wells Fargo had approved him for a loan modification and that he qualified for a loan modification under the statutory calculations. The Court noted that it was unclear whether Wells Fargo or its agent ever attempted to make the calculation required under MCL 600.3205c (1) (to determine if the borrower qualified for a modification).

The court held that the issues that would determine whether Wells Fargo forecloses on the property in violation of the loan modification law were factual. The court concluded:

> If further factual development shows that Wells Fargo did not comply with the loan modification law, then Mitan has standing and may pursue the merits of his claim. In sum, the district court erred when it held that Mitan lacked standing because the redemption period had expired. If Wells Fargo violated the loan modification law, then the redemption period never began. On remand, the district court should make factual findings to determine whether Wells Fargo assessed Frank's eligibility for a loan modification as required by statute. *Mitan*, 703 F3d at 953.

In the present case, Appellant was under an active modification review, and complied with all the requests of Appellee Nationstar. Moreover, Appellee Nationstar expressly represented in writing there would be no foreclosure while her loan was under modification review. Appellant provided requested documents to the Appellee. Additionally, Appellant timely requested an in person mediation under Michigan law, MCL 600.3205. Appellant was never provided an in person meeting or calculations denying a modification under MCL 600.3205. **Appellant**

14

**not even to this day has been provided with any correspondence that she was**

**denied or approved for a modification.**

The opinion and order of the U.S. District Court, which acknowledged the following, as pled by Appellant:

> Campbell attached a letter that she received from Nationstar dated March 6, 2013, acknowledging her application for the "FNMA Apollo Trial Period," and explaining that Nationstar would evaluate whether she was entitled to participate in this relief program. Nationstar Letter 3/6/13, ECF No. 1-2, Ex. 6. The letter states, "Please note that during this evaluation period, your home will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure period has already been initiated." *Id.* It is undisputed that, at that time, no foreclosure had been initiated. (RE #8, Opinion and Order, Page ID 361)

Moreover, the District Court acknowledged the following material facts:

> Campbell points to a letter from Nationstar dated June 19, 2013, in which Nationstar thanked her for sending documents to evaluate her "FNMA Apollo Trial Period" request and asked her to submit a signed copy of her most recent tax return by July 20, 2013. Nationstar Letter 6/19/13, ECF No. 1-2. (RE #8, Opinion and Order, Page ID 362)

Pursuant to *Mitan, supra*, Appellant's pleadings, the facts of which were acknowledged by the U.S. District Court, in the present case, create a factual issue sufficient to survive defendants Motion to Dismiss pursuant to *Mitan, supra*. Appellees never met or negotiated with Appellant despite Appellant's request for such a pre-foreclosure meeting pursuant to Michigan law. Appellees never supplied Appellant with calculations to determine whether he qualified for a loan modification as required under the law.

15

In addition, the fact that Appellant pled that she was under a modification review, produced a document by Appellee Nationstar stating there would be no foreclosure until the review was completed, requested a in person meeting for mediation under MCL 600.3205, creates a question of fact as to whether Appellant would have qualified for a trial modification had she been evaluated for one, and if the pre-foreclosure mediation process had been followed.

The U.S. District Court simply erred when it held that "assuming the allegations in the complaint are true, . . .plaintiff has not stated a claim upon relief can be granted." The trial court committed reversible error and the ruling granting Appellees' motion to dismiss should be reversed.

**II.  THE TRIAL COURT ERRED IN FAILING TO FIND APPELLANT DEMONSTRATED AN IRREGULARITY WITH THE FORECLOSURE AND A VIOLATION OF MCL 600.3205 AND MCL 600.3204.**

Appellant has standing to raise the issue of whether Appellees complied with MCL 600.3204 and MCL 600.3205, which is mandatory for a valid foreclosure. Michigan Courts have determined an accident, mistake or other irregularity can render the process voidable and not subject to dismissal.

> To the extent that an "accident or mistake" constitutes an "irregularity," the Court finds that the facts as pled in the Complaint have alleged an irregularity in connection with the foreclosure. The Court bases this finding on the peculiar chain of alleged events, events which the Court must accept as true for the purpose of a motion to dismiss. First, PHH selected the force-placed insurance policy. Second, the excessive premium

16

contributed to the default. Third, Plaintiffs were denied a loan modification because their monthly escrow payments, which included the insurance premiums, were too high for them to qualify. Fourth, the excessive amount claimed due in the foreclosure notice was a result of the insurance policy. Fifth, after the sheriff's sale, PHH reduced the insurance coverage to the amount Plaintiffs owed on the principal and refunded Plaintiffs the amount they overpaid. Sixth, PHH purchased the property for approximately $135,000 when the balance on the principal was around $85,000. Seventh, and lastly, PHH refused to take any corrective action beyond providing Plaintiffs with a refund of the funds they overpaid for the insurance. These allegations give the Court pause in dismissing Plaintiffs' illegal foreclosure claim at this early stage of litigation. *Galliard v. USAA Fed. Sav. Bank*, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012)).(RE #6-6, Page ID 304-314)

This position is further supported.

Since Chalmers in his response indicated the contract at issue is the Note and Mortgage, which he attached to his Complaint, the motion to dismiss must be denied. Chalmers asserts that JP Morgan Chase's failure to accept his payments in full caused Chalmers injury. Defendants argue that Chalmers was in "default" as defined in the Note and that JP Morgan Chase had the authority to foreclose in his mortgage. However, the Note also provides that the "Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount." (Note, ¶ 6) Chalmers asserts that he provided the full amount he was required to pay, yet JP Morgan Chase refused to accept the amount. *Chalmers v. JP Morgan Chase Bank, NA*, 2012 U.S. Dist. LEXIS 146463 (E.D. Mich. Oct. 11, 2012) (RE #6-7, Page ID 315-320)

Appellant, very much like the borrowers in *Galliard* and *Chalmers, supra,* attempted to obtain a modification, but was frustrated by Appellees. Appellant was assured in writing that her home **would not be forwarded to foreclosure while**

17

**under the modification review process.** (RE #1-2, Page ID 53-54) Appellant then requested her in person mediation, and while awaiting a response was requested by Appellees Nationstar to provide additional documents, which Appellant supplied. (RE #1-2, Page ID 60-63) **Appellees allege some "letter" was sent on May 15, 2013, however Appellees Nationstar was still communicating and requesting documents from Appellant in June 2013.** (RE #1-2, Page ID 64-65) **This raises a material factual question as to why Appellees Nationstar would be requesting additional documents in June 2013, if Appellant failed to provide requested documents and denied a modification through the mysterious May 15, 2013, attached as Appellees' Exhibit F**. The bottom line is Appellees total defense to the MCL 600.3205 claim is Appellant never returned document, yet Appellees have not produced any evidence to the contrary, and despite citing to the foreclosure affidavit, it merely states the parties were unable to reach an agreement, raising even more questions of fact.

The failure to comply with MCL 600.3205, makes compliance with MCL 600.3204 impossible. The necessity of compliance with MCL 600.3205, as a prerequisite and mandatory requirement for compliance with MCL 600.3204. MCL 600.3204(4) provides in pertinent part:

> (4) *A party shall not commence proceedings* under this chapter to foreclose a mortgage of property claimed as a principal residence exempt from tax under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, if 1 or more of the following apply:

18

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for the mortgagor to request, either directly or through a housing counselor, a meeting with the person designated under section 3205a(1)(c) under section 3205b has not expired.

(c) Within 30 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).

(d) Documents have been requested under section 3205b(2) and the time for producing the documents has not expired.

*(e) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter*.

(f) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(g) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7). MCLS § 600.3204

In *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F3d 949 (6th Cir. Mich. 2012) the Court specifically noted that a lender's failure to properly evaluate a borrower for a loan modification pursuant to Michigan statutes causes prejudice to the borrower because it deprives of him of the opportunity to avoid foreclosure.

19

Pursuant to *Mitan, supra* because of the prejudice to Appellant, Appellees' failure to evaluate Appellant's loan for a modification in accordance with the Michigan statutes, even based on a voidable analysis, would render the Sheriff's sale void, meaning the redemption period would never have begun to run and Appellant would have standing to challenge the foreclosure of her and has set forth viable claims in support of the statutory violations and irregularity in the foreclosure process.  The trial court erred by finding in favor of the Appellees, when a clear statutory violation renders the foreclosure voidable based upon prejudice to the borrower.

A.    **Appellant Clearly Establishes Substantial Prejudice Under *Kim v. JP Morgan Chase* And The Recent Michigan Court Of Appeals Case *Sobh v. Bank Of America Et Al.***

In *Kim v JP Morgan Bank*, 2012 Mich LEXIS 2220, the Michigan Supreme Court held that a structural defect in the foreclosure process rendered the Sheriff's sale voidable.  The *Kim* court then set forth the standard that the borrower must establish prejudice.  The *Kim* court determined prejudice was established if the borrower would have been in a better position to retain their property if there had not been noncompliance with the statute.  This position has been reiterated by the Michigan Court of Appeals. In *Sobh v. Bank of Am.,* 2013 Mich. App. LEXIS 993, (Mich. Ct. App. June 6, 2013), the Michigan Court of Appeals held:

> As in Kim, because defendants lacked standing to foreclose, defendants' foreclosure is voidable, but not void ab initio. Kim, 493 Mich at 115. We therefore reverse the judgment of the trial

20

court and remand. As in Kim, on remand: [T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by . . . [the] failure to comply with MCL 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent [the] noncompliance with the statute. [Kim, 493 Mich at 115-116.] *Sobh v. Bank of Am.,* 2013 Mich. App. LEXIS 993, 7-8 (Mich. Ct. App. June 6, 2013) (RE #6-8, Response Ex. 8, Page ID 321-324)

In the instant matter, it is quite evident Appellant can demonstrate an irregularity and prejudice. The right to redeem is not the proper analysis for prejudice. The analysis is whether the borrower would be in a better position. The Appellant would be in a better position if the Appellees had evaluated the Appellant for a modification **before foreclosure and in compliance with MCL 600.3205, and Appellee Nationstar's express representation.** (RE #1-2, Appellant's Complaint, Ex. 6, Page ID 53-54) The trial court erred in granting the motion to dismiss on this issue.

### III.   APPELLANT RAISES A VIABLE CLAIM UNDER 12 CFR 1024.41 SUPPORTED BY APPLICABLE CASE LAW AND 12 CFR 1024.41 IS A REMEDIAL STATUTE AND THE TRIAL COURT ERRED IN ITS RULING.

The trial court erred in its analysis of the retroactive application of 12 CFR 1024.41. 12 CFR 1024.41 as incorporated in RESPA at 12 CFR 1024.41 provides,

(a)    Enforcement and limitations. A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)). Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in §

> 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law. 12 CFR 1024.41

In this case, the subject property was referred to foreclosure while under modification review in violation of 12 CFR 1024.41(f). Appellant in fact, was provided with written correspondence by Appellees Nationstar Mortgage that her mortgage was still under review and **no foreclosure would occur.** (RE #1-2, Appellant's Complaint, Ex. 6, Page ID 53-54)

The general rule provides that courts should apply the law in effect when deciding cases, unless that law would have an impermissible retroactive effect as that concept is defined by the U.S. Supreme Court. The applicable case law in this area has determined:

> The Supreme Court has struggled in recent years to resolve the "apparent tension" between "two seemingly contradictory statements found in [its] decisions concerning the effect of intervening changes in the law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 263-64, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). HN3As a general rule, a court must "apply the law in effect at the time it renders its decision." Id. at 264 (quoting *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974)) (quotation marks omitted). Because "[r]etroactivity is not favored in the law," however, courts should not construe "congressional enactments and administrative rules . . . to have retroactive effect unless their language requires this result." Id. (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988)) (quotation marks omitted). In other

22

words, courts should apply the law in effect at the time that they decide a case unless that law would have an impermissible retroactive effect as that concept is defined by the Supreme Court. See *Patel v. Gonzales*, 432 F.3d 685, 691 (6th Cir. 2005) ("Courts should apply the law in effect at the time of the decision, unless such law has a retroactive effect on the parties."). The difficult issue in these cases is deciding under what circumstances a statute or regulation operates retroactively. Answering this question, as the Supreme Court has noted, "is not always a simple or mechanical task." Landgraf, 511 U.S. at 268. For one thing, "[*a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law*." Id. at 269 (citation omitted). Courts must accordingly "ask whether the new provision attaches new legal consequences to events completed before its enactment," id. at 269-70, such as by "impair[ing] rights a party possessed when he acted, increas[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed." Id. at 280. In making this determination, courts take "sound guidance" from "familiar considerations of fair notice, reasonable reliance, and settled expectations." Id. at 270. *Bellsouth Telecomms., Inc. v. Southeast Tel., Inc*., 462 F.3d 650, 657-658 (6th Cir. Ky. 2006) (emphasis added)

The *Bellsouth* court relying on US Supreme Court instruction further determined:

The Supreme Court in that case emphasized that *"[a] statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law*." Id. at 269 (emphasis added). At the end of that sentence, ***the Court added an explanatory footnote elaborating on why a statute's potential to upset expectations that a party had formed based upon the prior state of the law was not enough, in and of itself, to make application of that statute impermissibly retroactive: Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable***

23

> ***expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards. See [L. Fuller, The Morality of Law 60 (1964)] ("If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever"). Moreover, a statute is not made retroactive merely because it draws upon antecedent facts for its operation***. Id. at 269 n.24 (citations and quotation marks omitted). In other words, the fact that parties engage in conduct on the assumption that the law will allow them to act or to benefit in a certain manner is not a sufficient reason to refuse to apply a new law that renders that assumption misplaced. *Bellsouth Telecomms., Inc. v. Southeast Tel., Inc.*, 462 F.3d 650, 661-662 (6th Cir. Ky. 2006) (emphasis added).

The trial court rejected the retroactive application of the law stating:

> Campbell has not presented any authority in the regulation's language or legislative history to suggest that it should have retroactive effect in order to allow recovery under RESPA. "[T]here is no indication that Congress intended provisions altering RESPA to apply retroactively." *Davis v. Greenpoint Mortg. Funding, Inc.*, No. 09-cv-2719, 2011 WL 7070221, at *12 n.5 (N.D. Ga. Mar. 1, 2011), *report and recommendation adopted in relevant part*, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011). Accordingly, Campbell's claim must be dismissed.  (RE #8, Page ID 369)

The trial court did not use the more in depth analysis needed when there is ambiguity in the statutory language.  This issue of retroactivity under the Dodd Frank Act, which RESPA, 12 CFR 1024.41is codified under has been applied retroactively, and there is a split among circuits on this matter.  The more appropriate application has set forth the following analysis.

24

The first step of retroactivity analysis asks whether Congress clearly expressed an intent to limit the temporal reach of Section 922 of the Act. Id. It is necessary in answering this question to look at the outset to the precise language of the statute itself. Landgraf, 511 U.S. at 257 ("Our first question, then, is whether the statutory text on which Appellant relies manifests an intent that the . . . Act should be applied to cases that arose and went to trial before its enactment.").

Nothing in Section 922 of the Act provides an express congressional intent regarding retroactivity. The general language contained in Section 4 of the Act, which provides that "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after  [**6] the date of enactment of this Act," is not sufficient direction regarding the retroactive application of Section 922. See Landgraf, 511 U.S. at 257 (HN3"A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."). *Pezza v. Investors Capital Corp*., 767 F. Supp. 2d 225, 228 (D. Mass. 2011)

The *Pezza* court's analysis has been adopted in *Wong v. CKX, Inc.,* 890 F. Supp. 2d 411, 423 (S.D.N.Y. 2012), which applied the Dodd Frank Act retroactively.

More importantly, there is an express exception the removes the presumption against the retroactive application of a statute, which is if the statute is remedial in nature.  The US Sixth Circuit Court of Appeals has consistently upheld this position stating:

There is an exception to the presumption against retroactivity when a statute can be classified as remedial or procedural. Id. at 183. "[S]tatutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor

destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested." Id. (quotation omitted). Although Michigan courts describe the exception as encompassing laws that are either remedial or procedural, in this context the terms essentially mean the same thing—laws that are procedural in nature and do not create or destroy substantive rights. See id.; see also Dale Baker Oldsmobile, Inc. v. Fiat Motors of North America, Inc., 794 F.2d 213, 217 (6th Cir. 1986) ("[R]emedial statutes involve procedural rights or change the procedures for effecting a remedy. They do not, however, create substantive rights that had no prior existence in law or contract."). *Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.,* 706 F.3d 733, 739 (6th Cir. Mich. 2013)

There is no dispute in the Sixth Circuit that RESPA is a remedial statute, the

Sixth Circuit has held:

> Although the 'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing." *Medrano v. Flagstar Bank*, FSB, 704 F.3d 661, 665-66 (9th Cir. 2012) (some internal citations omitted). ***As a remedial statute, RESPA is construed broadly to effectuate its purposes***. *In re Carter*, 553 F.3d 979, 985-86, n.5 (6th Cir. 2009); see also Medrano, 704 F.3d at 665-66 ("RESPA's provisions relating to loan servicing procedures should be construed liberally to serve the statute's remedial purpose." (internal citation and quotation marks omitted)). *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. Ohio 2013)(emphasis added).

It is clear from the black letter law, that RESPA is a remedial statute and

exception to the prospective only application.  Additionally, if it were not a

remedial statute based upon the position of the US Supreme Court as articulated in

*Bellsouth supra.,* the upset of expectations is not enough to preclude application of

the law, if it operates in furtherance of a remedy and does not affect substantive rights. The substantive rights of the Appellees are not affected by 12 CFR 1024.41. There is nothing that imposes a duty to modify a loan or preclude foreclosure, 12 CFR 1024.41 merely provides a remedy for borrower to have a fair review to determine whether they are eligible before a foreclosure occurs. Appellees failed to do that after expressly representing it would in written correspondence to the Appellant. (RE #1-2, Appellant's Complaint, Ex. 6, Page ID 53-54)

Appellees' argument failed and Appellees cited no authority to support its position, Appellees' motion should have been must be denied on this claim, and the trial court erred by failing to dismiss the motion and permit discovery.

> **IV. THE TRIAL COURT MISINTERPRETS THE RECENT SIXTH CIRCUIT DECISION *MIK v FEDERAL HOME LOAN CORPORATION*, SUPPORTS APPELLANT'S CLAIM THAT FAILURE TO EVALUATE HER FOR A LOAN MODIFICATION IN VIOLATION OF FEDERAL REGULATIONS, CAN BE RAISED AS A DEFENSE TO FORECLOSURE AND EVICTION.**

The new Sixth Circuit Court of Appeals case, *Mik v. Federal Home Loan Mortgage Corporation*, 2014 U.S. App LEXIS 2332; 2014 FED App 0030P (6th Cir.), *supports* the argument in this case; that noncompliance with federal regulations can be raised as a defense to eviction actions undertaken pursuant to a foreclosure. The Court in *Mik* further held that such noncompliance may be the

basis of an affirmative, offensive state law claim. *Mik v. Federal Home Loan Mortgage Corporation*, 2014 U.S. App LEXIS 2332; 2014 FED App 0030P (6th Cir.) (RE #6-9, Appellant's Complaint, Ex. 6, Page ID 325-339)

In *Mik, supra*, the plaintiffs were tenants, under a written lease, in a home on which the landlord's mortgage was foreclosed by advertisement and which was sold at sheriff's sale. The plaintiffs were forcibly evicted. The plaintiffs sued for damages for violations of the federal Protecting Tenants at Foreclosure Act of 2009 ("PTFA") requiring that tenants be given the statutory 90-day notice and be permitted to remain in the house for the term of their lease under certain conditions.

The *Mik* court upheld Appellees' assertion that there was no evidence that Congress intended to create a federal private right of action under PTFA. However, the Mik Court specifically held: "Courts recognize that tenants can invoke PTFA as a defense to an unlawful detainer (eviction) action." The *Mik* court further held that violations of the PTFA can be used "offensively" to establish a state law cause of action, positively citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 544 (7th Cir. 2012), which are foreclosure cases involving HAMP violations. (emphasis added). The trial court erred in determining the analysis in *Mik*, applied solely to the PTFA. (RE #8, Page ID 360-371). The *Mik* court used the modification analysis as an example to support its holding in the MIK case. The Mik court further held that violations of the PFTA can be used

"offensively" to establish a state law cause of action, relying on the legal analysis

in *Wigod v. Wells Fargo Bank*, *N.A.*,673 F.3d 547, 544 (7th Cir. 2012), which are

foreclosure cases involving HAMP violations.  (emphasis added).  The *Mik* court

determined:

> In an analogous case, the Seventh Circuit explained why a
> violation of federal law can support a state law claim, even
> when—or, perhaps, especially when—there is no private right
> of action under a federal statute. In *Wigod v. Wells Fargo Bank*,
> *N.A.*, 673 F.3d 547, 554 (7th Cir. 2012), Lori Wigod sued
> Wells Fargo Bank, her home mortgage servicer, for refusing to
> modify her loan pursuant to the federal Home Affordable
> Mortgage Program ("HAMP"), asserting violations of Illinois
> law under common-law  contract and tort theories. The district
> court dismissed the complaint, reasoning that Wigod's claims
> were based on Wells Fargo's obligations under HAMP, which
> does not provide a private right of action. Id. at 555. The
> Seventh Circuit held that Wigod adequately pled four claims
> under Illinois law. *Mik v. Fed. Home Loan Mortg. Corp.*, 743
> F.3d 149, 166-167 (6th Cir. Ky. 2014)

Consistent with the recent Sixth Circuit decision in *Mik, supra*, Appellant

has pled and is entitled to raise the failure of Appellees' failure to provide

Appellant with a timely evaluation for modification **before the foreclosure sale** as

a defense to the foreclosure/eviction in this case offensively.

Significantly the case cited by the Appellees in support of its argument that

non-compliance with HAMP regulations cannot be raised as a defense to a

foreclosure/eviction,  *Hart v Countrywide Home Loans, Inc*, 735 F Supp 2d 741

(2010), primarily held that Appellant's claim should be dismissed because HAMP

regulations do not create a private cause of action.  However, as the recent decision

in *Mik, supra*, clarified, **even where federal regulations do not create an affirmative cause of action, they can be utilized as a defense or raised offensively in a foreclosure/eviction action**. Because that is what Appellant is asserting in the present case, Appellees' motion should have be denied, and thr trial court erred in its ruling dismissing the matter.

### A. Appellant Sets Forth A Valid Claim Of Negligence And No Binding Precedent Has Be Set On This Issue

Appellees relied on unpublished cases pending appeal to support its position that Appellant does not have a viable negligence claim including *Brown v. Wachovia Mortg*., No. 307344, 2013 WL 6083906, at *5 (Mich. Ct. App. Nov. 19, 2013) and *Downey v. Fed. Nat'l Mortg. Assoc.*, No 12-cv-14840, 2013 WL 4417437, at *6 (E.D. Mich. Aug. 14, 2013). Appellees neglected to inform this Court both of those cases are pending on appeal at *Brown v. Wachovia Mortg* at the Michigan Supreme Court and *Downey v. Fed. Nat'l Mortg. Assoc.,* Docket No. 13-2225 at the Sixth Circuit Court of Appeals. There is not any binding precedent on this issue. Appellees initial and **obvious confusion is Appellees repeatedly assert "no duty to modify". Appellant alleges the duty is to properly evaluate for a modification.** Appellant can and does bring a viable negligence claim.

To establish a prima facie case of negligence**,** a plaintiff must prove (1) a duty owed by the defendant, (2) breach of that duty, (3) causation, and (4) damages. *Haliw v Sterling Hts*, 464 Mich 297, 309-310; 627 NW2d 581 (2001).

The violation of a statute can establish a prima facie case of negligence. *Dep't of Transp v Christensen*, 229 Mich App 417, 420; 581 NW2d 807 (1998). For example, in *Thaut v Finley (On Rehearing)*, 50 Mich App 611, 613; 213 NW2d 820 (1973), this Court explained that "violation of a statute is negligence per se if the statute was intended to protect a class of persons, including the plaintiff, from the type of harm which resulted from its violation." "This is so, even though the statute does not, as is normally the case, contain a provision respecting civil liability." *Id*. However, the plaintiff must still show that the violation of the statute was the proximate cause of the damages the plaintiff seeks to recover. *Id*. at 613 n 6.

In the instant matter, Appellant has pled a negligence claim, based upon Appellees' breach of duty which caused harm and damages. In relation to the HAMP regulations and guidelines, there is a new area of the law and courts are split but court have determine negligence as a viable claim and dismissal under a motion to dismiss inappropriate. This position has been upheld in California district court explaining:

> Defendant argues that Plaintiff's negligence claim fails because Defendant owed no duty of care to Plaintiff. "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn*., 231 Cal. App. 3d 1089, 1096, 283 Cal. Rptr. 53 (1991). However, whether a duty of care exists between a lender and borrower is governed by the circumstances of the transaction. In California,

31

the test for determining whether a financial institution owes a duty of care to a borrower-client involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. Id. at 1098 (internal quotation marks omitted)…

The loan modification transaction was clearly intended to affect Plaintiff by reducing her payments and allowing her to keep her home. It was also foreseeable that Plaintiff would suffer harm from a negligently mishandled modification application because she stood a chance of defaulting on the debt and losing her home if the modification was not processed correctly. Plaintiff alleges that she actually suffered injury through receipt of a modification that was not as advantageous as the HAMP modification that she allegedly was entitled to. There appears to be a close connection between that harm and the alleged negligence because Defendant had offered Plaintiff a HAMP modification, and Plaintiff allegedly failed to receive such a modification entirely due to Defendant's negligence in processing the documentation and in informing Plaintiff as to her responsibilities in finalizing the modification. Public policy neither clearly favors nor disfavors a duty of care in this circumstance. While it is very important that home loan modifications be handled in a competent manner given the current mortgage situation in this country, imposition of a duty of care in processing modifications may discourage lenders from even attempting such modifications. ***Nevertheless, the Court finds that the totality of the factors favors the imposition of a duty of care, at least at the motion to dismiss stage.*** Kennedy v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 111013, 10-12 (C.D. Cal. Sept. 28, 2011)) (RE #6-10, , Page ID 339-342)

Further other courts have held that a plaintiff may pursue a state law claim

notwithstanding HAMP as long as a prima facie claim has been stated under state

32

law. E.g., *Fletcher v. Onewest Bank, FSB*, No. 10 C 4682, 798 F. Supp. 2d 925, 2011 U.S. Dist. LEXIS 72562, 2011 WL 2648606, at *3-8 (N.D. Ill. 2011); *Bosque v. Wells Fargo Bank, N.A*., 762 F. Supp. 2d 342, 350-53 (D. Mass. 2011). Appellant's negligence claim is a fact question and dismissal on a motion to dismiss should be denied and discovery permitted on the factual issues.

## CONCLUSION

Appellees' motion to dismiss should have been denied.  Appellant's complaint and factual allegations should have been accepted as true.  Moreover, the Court should have made all reasonable inferences and construed in the Appellant's favor. Appellant was entitled to have an opportunity for discovery and to have her claims properly adjudicated in accordance with the Federal Court Rules and applicable law.  The trial court cannot substitute its judgment for the trier of fact under a 12(b)(6) motion.  Appellees failed to meet its burden in its motion to dismiss and Appellant requests this Honorable Court to reverse and remand to permit the appropriate discovery and adjudication of this matter.

WHEREFORE Appellant Barbara Campbell requests this Honorable Court to reverse the trial court's granting of Appellees' motion to dismiss.

Respectfully submitted,

VANESSA G. FLUKER, ESQ., PLLC

/s/Vanessa G. Fluker
Vanessa G. Fluker (P64870)
Attorney for Plaintiff/Appellant

33

2920 East Jefferson, Suite 101
Detroit, MI 48207
Phone (313) 393-6005
vgflawyer@sbcglobal.net

DATED: August 12, 2014

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Brief on Appeal was produced in Microsoft Word, 14 point, Times New Roman font and contains 9,022, thereby complying with the limitations set forth in Fed. R. App. P. 32 (a)(7)(C).

/s/Vanessa G. Fluker, Esq.
Vanessa G. Fluker, Esq.
*Counsel for Defendants-Appellants*

DATED:  August 12, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date the foregoing document,

**Appellant's Brief on Appeal with Appellant's Designation of District Court**

**Documents,** were filed and served on all parties or their counsel of record via the

CM/ECF Document Appellate Filing System.

/s/Vanessa G. Fluker, Esq.
Vanessa G. Fluker, Esq.
*Counsel for Defendants-Appellants*

Dated:  August 12, 2014

# APPELLANTS' DESIGNATION OF RELEVANT
# DISTRICT COURT DOCUMENTS

| Date Filed | RE# | Docket Text |
|---|---|---|
| 02/12/2014 | 1 | NOTICE OF REMOVAL by Federal National Mortgage Association, Nationstar Mortgage from Wayne County Circuit Court, case number 14-000328-CH. (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1, # 3 Exhibit 2) |
| 03/25/2014 | 5 | MOTION to Dismiss by Federal National Mortgage Association, Nationstar Mortgage. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G) |
| 04/15/2014 | 6 | RESPONSE to MOTION to Dismiss *PLAINTIFFS RESPONSIVE BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS* filed by Barbara Campbell. (Attachments: # 1 Index of Exhibits, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit) |
| 05/02/2014 | 7 | REPLY to Response re MOTION to Dismiss filed by All Defendants. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A) |
| 05/19/2014 | 8 | ORDER Granting Defendants' Motion to Dismiss.. Signed by District Judge Stephen J. Murphy, III. |
| 05/19/2014 | 9 | JUDGMENT, entered. Signed by District Judge Stephen J. Murphy, III. |
| 06/15/2014 | 10 | NOTICE OF APPEAL by Barbara Campbell re Judgment, Order on Motion to Dismiss |